**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SemiLED Innovations LLC,<br><br>Plaintiff,<br><br>v.<br><br>JIAXING SUPER LIGHTING ELECTRIC APPLIANCE CO., LTD. AND ZHEJIANG SUPER LIGHTING ELECTRIC APPLIANCE CO., LTD.<br><br>Defendants. | Civil Action No. ________________<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff SemiLED Innovations LLC ("SemiLED" or "Plaintiff"), by and through the undersigned counsel, hereby asserts the following claims for patent infringement against Defendants Jiaxing Super Lighting Electric Appliance Co., Ltd. ("JSL") and Zhejiang Super Lighting Electric Appliance Co., Ltd. ("ZSL") (collectively, "Super Lighting"), and alleges as follows:

**SUMMARY**

1. Plaintiff is the owner by assignment of all right, title, and interest in United States Patent Nos. 8,309,971; 8,963,196; and 9,530,942 (collectively, the "Patents-in-Suit").

2. Defendants infringe the Patents-in-Suit at least by selling, without authorization, Plaintiff's proprietary technologies incorporated in a number of Defendants' residential and commercial products including, *inter alia*, Keystone T5 LED Lamp (KT-LED25T5HO-48GC-835-DX2), KT-LED10.5T8-48G-830-DX2, KT-LED15PST8-U1G-8CSJ-X3, KT-LED15PST8-U1G-8CSJ-X3, KT-LED40PST8-96G-8CSJ-D2, KT-LED40PST8-D48GC-8CSJ-D2, KT-

LED9T8-24G-830-DX2/USA, RAB T8-9-24G-830-SD-BYP USA, RAB T8-96G-DE-BYP, RAB T8-U6G-SD-HYB, RAB T8-U1G-SD-HYB, RAB T8-8-48G-850-SD-BYP, Light Efficient Designs LED-10T8-830DE48-G3, among other substantially similar products (collectively, the "Accused Products"). These Accused Products are marketed, offered, and distributed throughout the United States, including in this District.

3. By this action, Plaintiff seeks to obtain compensation for the harm Plaintiff has suffered, and will continue to suffer, as a result of Defendants' infringement of the Patents-in-Suit.

## NATURE OF THE ACTION

4. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

5. Defendants have infringed, and continue to infringe, one or more claims of Plaintiff's Patents-in-Suit at least by making, using, selling, and/or offering to sell the Accused Products in the United States, including in this District, and/or by importing the Accused Products into the United States.

6. Plaintiff is the legal owner by assignment of the Patents-in-Suit, which were duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Plaintiff seeks monetary damages for Defendants' infringement of the Patents-in-Suit.

## THE PARTIES

7. Plaintiff SemiLED Innovations LLC is a Texas limited liability company with a business address at 6841 Virginia Parkway, Suite 103-441, McKinney, Texas 75071. Plaintiff is the owner of the intellectual property rights at issue in this action.

8. Defendant JSL is a corporation organized and existing under the laws of the People's Republic of China with its principal place of business at No. 1288 Jiachuang Rd., Xiuzhou Area, Jiaxing City, Zhejiang Province, China.

9. Defendant ZSL is a corporation organized and existing under the laws of the People's Republic of China with its principal place of business at Xinbi Industrial Park, Jinyun County, Lishui City, Zhejiang Province, China.

10. Defendants JSL and ZSL have a parent-subsidiary relationship, with ZSL being the parent company of what is believed to be its wholly owned subsidiary, JSL. The two entities share common ownership, management, and operational control under the Super Lighting Group structure, and thus, are collectively known as Super Lighting.

11. On information and belief, Defendants directly and/or indirectly distribute, market, offer to sell, and/or sell the Accused Products in the United States and/or import the Accused Products into the United States, including in the Eastern District of Texas, and otherwise directs infringing activities in this District in connection with the Accused Products.

## JURISDICTION AND VENUE

12. As this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., this Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

13. Super Lighting is subject to personal jurisdiction in this Court. In particular, Super Lighting is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statue due at least to Super Lighting's substantial business in this Judicial District, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in the other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

14. Upon information and belief, Super Lighting sells and supplies infringing lighting products into the stream of commerce with the knowledge and purposeful intent that they be

purchased and used by customers in this Judicial District, therefore obtaining the benefits and protections of the state's laws; the dispute arises out of and has a substantial connection with Super Lighting's contacts with Texas, including the importation, use, offer for sale, and sale of Super Lighting's infringing lighting products; and the exercise of jurisdiction is fair and reasonable.

15. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(c), which Provides that "a defendant not resident in the Unites States may be sued in any judicial district."

## PATENTS-IN-SUIT

### U.S. Patent No. 8,309,971

16. U.S. Patent No. 8,309,971 (the "'971 Patent") is titled "Light Emitting Diode Having Electrode Pads" and was issued on Nov. 13, 2012. A true and correct copy of the '971 Patent is attached as Exhibit A.

17. The '971 Patent was filed on December 21, 2010 as U.S. Patent Application No. 12/974,917.

18. Plaintiff is the owner of all rights, title, and interest in and to the '971 Patent, with the full and exclusive right to bring suit to enforce the '971 Patent, including the right to recover for past infringement.

19. The '971 Patent is valid and enforceable under United States Patent Laws.

20. The inventors of the '971 Patent recognized problems with the distribution of current in the P-type semiconductor layer. According to the inventors of the '971 Patent, "To solve such problems, a transparent electrode layer having a low resistivity may be formed on the P-type semiconductor layer so as to enhance current spreading." *See* Ex. A. at 1:53-56. This solution increased the light emitting area of the LED.

21. One problem present in the prior art was that "since the transparent electrode layer tends to absorb light, the thickness of the transparent electrode layer may be limited, thereby

providing limited current spreading. In particular, in a large LED having an area of about 1 $mm^2$ or more for high output, there may be a limit in achieving efficient current spreading through the transparent electrode layer." *Id*. at 1:61-67.

22. The inventions claimed by the '971 Patent addressed these limitations by, e.g., spacing an electrode apart from a semiconductor layer and providing LEDs with various structures of electrode pads and extensions capable of enhancing current spreading. *See id*. at 2:26-28 and 2:32-35. As a result, the '971 Patent offered advantages of, *inter alia*, enhancing current spreading, as well as increasing the luminous efficacy.

**U.S. Patent No. 8,963,196**

23. U.S. Patent No. 8,963,196 (the "'196 Patent") is titled "Slim LED Package" and was issued on Feb. 24, 2015. A true and correct copy of the '196 Patent is attached as Exhibit B.

24. The '196 Patent was filed on Jan 22, 2014 as U.S. Patent Application No. 14/161,377.

25. Plaintiff is the owner of all rights, title, and interest in and to the '196 Patent, with the full and exclusive right to bring suit to enforce the '196 Patent, including the right to recover for past infringement.

26. The '196 Patent is valid and enforceable under United States Patent Laws.

27. The '196 Patent recognized problems with existing light emitting diode (LED) packages at the time of the inventions of the '196 Patent.

28. For instance, the inventors of the '196 Patent recognized that prior art light emitting diode packages had issues where the housing supporting the lead frame would have excessive thickness. The added thickness made it difficult to fabricate a thin lead frame type LED package. Additionally, "the encapsulation material of the LED package, which covers the LED chip, undergoes a yellowing phenomenon by energy generated from the LED chip emitting light. Such

a yellowing phenomenon is a main cause of decreased luminescence performance and lifetime of the LED package." Ex. C at 1:53-57. Prior attempts to address these issues involved the use of a heat sink structure, such as a heat dissipation slug inserted into the housing, which complicated the manufacturing process. *See id*. at 1:58-64.

29. The inventors of the '196 Patent recognized that a "lead frame on which the LED chip is mounted and the lead frame with which a bonding wire is connected have a significantly increased area exposed to the bottom, so that the LED package has greatly improved thermal dissipation efficiency." *See id*. at 3:1-5. Additionally, the inventors of the '196 Patent describe the following method to increase LED package slimness: "the LED package is configured to mount an LED chip on a chip mounting recess, which is formed on a predetermined region of a lead frame by reducing the thickness of the predetermined region, such that the thickness of the LED chip partially overlaps the thickness of the lead frame." *See id*. at 2:62-66.

30. In view of the foregoing, among other advantages over the prior art, the inventions claimed by the '196 Patent provide the benefits of "thermal dissipation efficiency" and a reduction of thickness over the prior art by way of the LED chip mounting recess and lead frame area. *See id*. at 2:61-68 and 3:1-5.

**U.S. Patent No. 9,530,942**

31. U.S. Patent No. 9,530,942 (the "'942 Patent") is titled "Slim LED Package" and was issued on Dec. 27, 2016. A true and correct copy of the '942 Patent is attached as Exhibit C.

32. The '942 Patent was filed on August 3, 2015 as U.S. Patent Application No. 14/816,532.

33. Plaintiff is the owner of all rights, title, and interest in and to the '942 Patent, with the full and exclusive right to bring suit to enforce the '942 Patent, including the right to recover for past infringement.

34. The ‘942 Patent is valid and enforceable under United States Patent Laws.

35. The ‘942 Patent recognized problems with existing light emitting diode (LED) packages at the time of the inventions of the ‘942 Patent.

36. For instance, the inventors of the ‘942 Patent recognized that prior art light emitting diode packages had issues where the housing supporting the lead frame would have excessive thickness. The added thickness made it difficult to fabricate a thin lead frame type LED package. Additionally, “the encapsulation material of the LED package, which covers the LED chip, undergoes a yellowing phenomenon by energy generated from the LED chip emitting light. Such a yellowing phenomenon is a main cause of decreased luminescence performance and lifetime of the LED package.” Ex. D at 1:57-62. Prior attempts to address these issues involved the use of a heat sink structure, such as a heat dissipation slug inserted into the housing, which complicated the manufacturing process. *See id*. at 1:64-67 and 2:1.

37. The inventors of the ‘942 Patent recognized that a “lead frame on which the LED chip is mounted and the lead frame with which a bonding wire is connected have a significantly increased area exposed to the bottom, so that the LED package has greatly improved thermal dissipation efficiency.” *See id*. at 3:6-11. Additionally, the inventors of the ‘942 Patent describe the following method to increase LED package slimness, “the LED package is configured to mount an LED chip on a chip mounting recess, which is formed on a predetermined region of a lead frame by reducing the thickness of the predetermined region, such that the thickness of the LED chip partially overlaps the thickness of the lead frame.” *See id*. at 2:67 and 3:1-4.

38. In view of the foregoing, among other advantages over the prior art, the inventions claimed by the ‘942 Patent provide the benefits of “thermal dissipation efficiency” and a reduction of thickness over the prior art by way of the LED chip mounting recess and lead frame area. *See id*. at 2:67, 3:1-4 and 3:6-11.

**ACCUSED PRODUCTS**

39. Upon information and belief, Super Lighting manufactures and supplies lighting products to multiple branded lighting suppliers including, for example, Keystone Technologies; RAB Lighting; Precision Lighting & Transformer Solutions (PLT Solutions); and Light Efficient Design.

40. The DesignLights Consortium (DLC) maintains a publicly available Qualified Products List as an industry resource for identifying high-performing, energy-efficient LED lighting products. *Increasing Efficiency and LED Adoption in CEA*, DLC, https://designlights.org//. Products listed on the Qualified Products List undergo rigorous evaluation to ensure they meet DLC's technical requirements for performance, reliability, and energy savings. The Qualified Products List provides a large range of detailed technical information about each registered product and serves as a trusted reference for utilities, energy efficiency programs, and commercial buyers.

41. A comparative analysis of various products included in the DesignLights Consortium's ("DLC") Qualified Products List reveals that numerous lighting products marketed under branded lighting supplier names (such as Keystone Technologies, PLT Solutions, RAB Lighting, and Light Efficient Design) share identical technical specifications with products registered to Super Lighting. Publicly available U.S. import records further reveal direct supply relationships between entities operating under the Super Lighting name and these branded lighting suppliers, including shipments to Keystone Technologies, Precision Lighting & Transformer, Inc. (PLT Solutions), RAB Lighting, and TADD, LLC (doing business as Light Efficient Design).[1]

[1] *See* ImportInfo, [Hong Kong Super Lighting Electric](https://www.importinfo.com/hong-kong-super-lighting-electric) (identifying Keystone Technologies LLC as an associated customer); ImportInfo, [Zhejiang Super Lighting Electric Appliance Co., Ltd.](https://www.importinfo.com/zhejiang-super-lighting-electric-appliance-co-ltd)

Super Lighting also publicly identifies itself as an OEM/ODM lighting manufacturer. Upon information and belief, as strongly indicated by these duplicate product registrations and corroborating import records, Super Lighting is the original manufacturer and supplier of certain lighting products that are subsequently rebranded and sold by the respective branded lighting suppliers.

42. Upon information and belief, Super Lighting manufactures infringing Keystone Technologies, PLT Solutions, RAB Lighting, and Light Efficient Design lighting products, including but not limited to model numbers Keystone T5 LED Lamp (KT-LED25T5HO-48GC-835-DX2), KT-LED10.5T8-48G-830-DX2, KT-LED15PST8-U1G-8CSJ-X3, KT-LED15PST8-U1G-8CSJ-X3, KT-LED40PST8-96G-8CSJ-D2, KT-LED40PST8-D48GC-8CSJ-D2, KT-LED9T8-24G-830-DX2/USA, RAB T8-9-24G-830-SD-BYP USA, RAB T8-96G-DE-BYP, RAB T8-U6G-SD-HYB, T8-U1G-SD-HYB, RAB T8-8-48G-850-SD-BYP, Light Efficient Designs LED-10T8-830DE48-G3. The infringing Keystone Technologies, RAB Lighting, and Light Efficient Design lighting products are imported, sold, and offered for sale to customers throughout the United States, including at least over the internet in this Judicial District, as shown below:

(identifying Precision Lighting & Transformer, Inc.); ImportInfo, [Jiaxing Super Lighting Electric App](https://www.importinfo.com/jiaxing-super-lighting-electric-app) (identifying RAB Lighting, Inc.); ImportYeti, [Jiaxing Super Lighting Electric App](https://www.importyeti.com/supplier/jiaxing-super-lighting-electric-app) (identifying TADD, LLC). See also [Light Efficient Design (TADD, LLC)](https://www.licensing.lighting.philips.com/licensee/129/light-efficient-design-tadd-llc) (confirming the relationship between TADD, LLC and Light Efficient Design).


Page 1 of 4

KEYSTONE SINCE 1945 LIGHT MADE EASY

DIRECTDRIVE DX2
SINGLE- OR DOUBLE-ENDED LINE VOLTAGE LED TUBES

KT-LED25T5HO-48GC-8XX-DX2 /G2
T5 LED LAMP

DESCRIPTION
25W T5 LED | 3500/4000/5000/6500K | >80 CRI | High-Output | Single- or Double-Ended Wiring

RoHS Compliant

10 YEAR LIMITED WARRANTY

| | |
|---|---|
| **LAMP TYPE:** Linear | |
| **BULB TYPE:** T5 LED | |
| **BASE TYPE:** G5 (Miniature Bi-Pin) | |
| **WATTAGE:** 25W | |
| **COLOR TEMPERATURE:** 3500/4000/5000/6500K | |
| **COLOR RENDERING INDEX (CRI):** >80 | |
| **WARRANTY:** 5 Years | |

https://www.keystonetech.com/products/lamps/led-tubes/type-b- -line-voltage/t5- and -t8?page=2

43. Super Lighting has infringed and continues to infringe the Patents-in-Suit. Charts showing infringement of exemplary claims of the Patents-in-Suit by representative features and functionality of accused lighting products are attached as Exhibits D, E, F and incorporated herein. SemiLED reserves the right to assert additional patents and claims and to identify additional accused lighting products.

44. As described below, Super Lighting has been and counties to infringe the Patents-in-Suit by making, using, offering for sale, selling, or importing accused lighting products that practice the Patents-in-Suit.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,309,971**

45. Plaintiff incorporates by reference and re-alleges 1-44 of the Complaint as if fully set forth herein.

46. Super Lighting has infringed and is infringing, either literally or under the doctrine

of equivalents, the '971 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the Keystone T5 LED Lamp (KT-LED25T5HO-48GC-835-DX2), KT-LED10.5T8-48G-830-DX2, KT-LED15PST8-U1G-8CSJ-X3, KT-LED15PST8-U1G-8CSJ-X3, KT-LED40PST8-96G-8CSJ-D2, KT-LED40PST8-D48GC-8CSJ-D2, KT-LED9T8-24G-830-DX2/USA, RAB T8-9-24G-830-SD-BYP USA, RAB T8-96G-DE-BYP, RAB T8-U6G-SD-HYB, T8-U1G-SD-HYB, RAB T8-8-48G-850-SD-BYP, Light Efficient Designs LED-10T8-830DE48-G3, among other substantially similar products (collectively, the "'971 Accused Products").

47. As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claims 1, 7-9, and 11 of the '971 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '971 Accused Products that it obtains during discovery.

48. ***1(a): A light emitting diode, comprising a substrate;***—The exemplary Keystone T5 LED Lamp contains light emitting diodes, as seen in Figure 1A - 1 and Figure 1A - 2 comprising a substate.



*Figure 1A - 1 - LED Chip – Keystone T5 LED Lamp*



*Figure 1A - 2 - LED Chip – Keystone T5 LED Lamp*

49. ***1(b): a first conductive type semiconductor layer arranged on the substrate;***— As

one non-limiting example, the below scanning electron microscope (SEM) images of an individual light emitting diode from the exemplary Keystone T5 LED Lamp, as seen in Figure 1B – 1 and Figure 1B - 2, are annotated to illustrate the first conductive type semiconductor layer arranged on the substrate:




*Figure 1B - 1 Keystone T5 LED Lamp (1)*




*Figure 1B - 2 Keystone T5 LED Lamp (2)*

50. ***1(c): a second conductive type semiconductor layer arranged on the first conductive type semiconductor layer;***—As one non-limiting example, the below SEM image of an individual light emitting diode from the exemplary Keystone T5 LED Lamp, as seen in Figure 1B – 3, is annotated to illustrate the second conductive type semiconductor layer arranged on the conductive type semiconductor layer.




*Figure 1B – 3 Keystone T5 LED Lamp*

51. ***1(d): an active layer disposed between the first conductive type semiconductor layer and the second conductive type semiconductor layer;***— As one non-limiting example, the below SEM image of an individual light emitting diode from the exemplary Keystone T5 LED Lamp, as seen in Figure 1B - 4, is annotated to illustrate the active layer between the two conductive type semiconductor layers.




*Figure 1B - 4 Keystone T5 LED Lamp*

52. ***1(e): a first electrode pad electrically connected to the first conductive type semiconductor layer;***— As one non-limiting example, the below SEM image of an individual light emitting diode from the exemplary Keystone T5 LED Lamp, as seen in Figure 1B - 5, is annotated to illustrate the first electrode pad electrically connected to the first conductive type semiconductor layer.




*Figure 1B -5 Keystone T5 LED Lamp*

53. ***1(f): a second electrode pad arranged on the second conductive type semiconductor layer;***— As one non-limiting example, the below SEM image of an individual light emitting diode from the exemplary Keystone T5 LED Lamp, as seen in Figure 1B - 6, is annotated to illustrate the second electrode pad arranged on the second conductive type semiconductor layer.




*Figure 1B - 6 Keystone T5 LED Lamp*

54. ***1(g): an insulation layer disposed between the second conductive type semiconductor layer and the second electrode pad;***— As one non-limiting example, the below SEM image of an individual light emitting diode from the exemplary Keystone T5 LED Lamp, as seen in Figure 1B - 7, is annotated to illustrate the insulation layer between the second conductive type semiconductor layer and the second electrode pad.




*Figure 1B- 7 Keystone T5 LED Lamp*

55. ***1(h): and at least one upper extension electrically connected to the second electrode pad, the at least one upper extension being electrically connected to the second conductive type semiconductor layer.***— As one non-limiting example, the below SEM images of an individual light emitting diode from the exemplary Keystone T5 LED Lamp, as seen in Figure

1B - 8 and Figure 1B - 9, are annotated to illustrate the upper extension electrically connected to the second electrode pad and second conductive type semiconductor layer.




*Figure 1B - 8 Keystone T5 LED Lamp (1)*




*Figure 1B – 9 Keystone T5 LED Lamp (2)*

56. ***Claim 7: The light emitting diode of claim 1, wherein the first electrode pad is arranged to face the second electrode pad.***— As one non-limiting example, the below SEM image of an individual light emitting diode from the exemplary Keystone T5 LED Lamp, as seen in Figure 1B - 10, is annotated to illustrate the first electrode pad facing the second electrode pad.




*Figure 1B – 10 Keystone T5 LED Lamp*

57. ***Claim 8: The light emitting diode of claim 7, further comprising a first lower extension extending from the first electrode pad towards the second electrode pad, the first lower extension being electrically connected to the first conductive type semiconductor layer.***— As one non-limiting example, the below SEM images of an individual light emitting diode from the exemplary Keystone T5 LED Lamp, as seen in Figure 1B – 11 and Figure 1B-12, are annotated to illustrate the lower extension extending from the first electrode pad towards the second electrode pad, wherein the first lower extension is electrically connected to the first conductive type semiconductor layer.




*Figure 1B – 11 Keystone T5 LED Lamp (1)*




*Figure 1B – 12 Keystone T5 LED Lamp (2)*

58. ***Claim 9: The light emitting diode of claim 8, wherein a distal end of the first lower extension is closer to the second electrode pad than the first electrode pad.***— As one non-limiting example, the below SEM image of an individual light emitting diode from the exemplary Keystone T5 LED Lamp, as seen in Figure 1B - 13, is annotated to illustrate that the distal end of the first lower extension is closer to the second electrode pad than the first electrode pad.




*Figure 1B – 13 Keystone T5 LED Lamp*

59. ***Claim 11: The light emitting diode of claim 1, further comprising a transparent electrode layer arranged on the second conductive type semiconductor layer, the transparent electrode layer forming an ohmic contact with the second conductive type semiconductor layer, wherein the transparent electrode layer is divided into at least two regions, and the second electrode pad is arranged on an exposed region of the second conductive type semiconductor layer between the at least two regions of the transparent electrode layer.***— As one non-limiting example, the below SEM images of an individual light emitting diode from the exemplary Keystone T5 LED Lamp, as seen in Figures 1B – 14 through 1B – 16, are annotated to illustrate the transparent electrode layer arranged on the second conductive type semiconductor layer, wherein the transparent electrode forms an ohmic contact with the second conductive type semiconductor layer and is divided into two regions, as well as the second electrode pad being arranged on an exposed region of the second conductive type semiconductor layer between the at least two regions of the transparent electrode layer. As illustrated in Figure 1B – 16, Energy-Dispersive X-ray Spectroscopy (EDS) analysis demonstrates that the transparent electrode layer is an Indium Tin Oxide (ITO) layer.




*Figure 1B – 14 Keystone T5 LED Lamp (1)*




*Figure 1B – 15 Keystone T5 LED Lamp (2)*




| Quant. Type | Chemical formula | Line | keV | Mass% | Mol% | Cations | K ratio | Standard Data | ZAF |
|---|---|---|---|---|---|---|---|---|---|
| Automatically identified | C | K | 0.277 | 27.04±0.12 | 79.30±0.36 | 0.00 | 14.98 | Std-less | 0.94/5.02/1.00 |
| | O | K | 0.525 | | | | | Std-less | |
| Automatically identified | Al2O3 | K | 1.486 | 10.17±0.11 | 3.51±0.04 | 3.18 | 7.57 | Std-less | 0.93/2.00/1.00 |
| Automatically identified | SiO2 | K | 1.739 | 15.06±0.14 | 8.83±0.08 | 4.00 | 11.84 | Std-less | 0.91/1.71/1.00 |
| Automatically identified | Ga2O3 | L | 1.098 | 35.47±0.20 | 6.66±0.04 | 6.04 | 42.79 | Std-less | 1.09/1.47/1.00 |
| Automatically identified | In2O3 | L | 3.286 | 10.94±0.13 | 1.39±0.02 | 1.26 | 20.75 | Std-less | 1.20/0.95/1.00 |
| Manually identified | SnO2 | L | 3.443 | 1.32±0.10 | 0.31±0.02 | 0.14 | 2.08 | Std-less | 1.33/0.98/1.00 |
| Total | | | | 100.00 | 100.00 | | | | |
| Spc_001 | | | | | | | | | Fitting ratio 0.0243 |

*Figure 1B – 16 Keystone T5 LED Lamp (3)*

60. Upon information and belief, Super Lighting was aware of Plaintiff's LED patent portfolio, which includes the '971 Patent, and the relevance of Plaintiff's patents to Super Lighting's products since before the complaint was filed as a result of Plaintiff's proactive efforts to engage Super Lighting in licensing discussions. Super Lighting, however, did not enter into a license, but instead moved forward with the making, using and selling of products that had an objectively high chance of infringing one or more of Plaintiff's patents. Plaintiff therefore asserts that Super Lighting's infringement is willful and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

61. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '971 Patent.

62. Plaintiff is entitled to recover from Super Lighting all damages that Plaintiff has sustained as a result of Defendants' infringement of the '971 Patent, including, without limitation, a reasonable royalty.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,963,196**

63. Plaintiff incorporates by reference and re-alleges paragraphs 1-62 of the Complaint

as if fully set forth herein.

64. Super Lighting has infringed and is infringing, either literally or under the doctrine of equivalents, the '196 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Keystone T5 LED Lamp (KT-LED25T5HO-48GC-835-DX2), KT-LED10.5T8-48G-830-DX2, KT-LED15PST8-U1G-8CSJ-X3, KT-LED15PST8-U1G-8CSJ-X3, KT-LED40PST8-96G-8CSJ-D2, KT-LED40PST8-D48GC-8CSJ-D2, KT-LED9T8-24G-830-DX2/USA, RAB T8-9-24G-830-SD-BYP USA, RAB T8-96G-DE-BYP, RAB T8-U6G-SD-HYB, T8-U1G-SD-HYB, RAB T8-8-48G-850-SD-BYP, Light Efficient Designs LED-10T8-830DE48-G3, among other substantially similar products (collectively, the "'196 Accused Products").

65. By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '196 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '196 Accused Products that it obtains during discovery.

66. ***1(a): A light emitting diode (LED) package, comprising***:— The exemplary Keystone T5 LED Lamp, as seen in Figure 2A - 1 an Figure 2A - 2, comprises a "light emitting diode (LED) package," as recited in claim 1:



*Figure 2A - 1 - LED Product – Keystone T5 LED Lamp*



*Figure 2A - 2 - LED Product - Keystone T5 LED Lamp*

67. ***1(b): a first lead frame and a second lead frame separated from each other;***— The exemplary Keystone T5 LED Lamp comprises a "first lead frame and second lead frame separated from each other," as seen in Figure 2B - 1 where the first and second lead frames are annotated in yellow:




*Figure 2B - 1 Keystone T5 LED Lamp*

68. ***1(c): an LED Chip disposed on the first lead frame and electrically connected to the first lead frame and the second lead frame; and;***— The exemplary Keystone T5 LED Lamp comprises an "LED Chip disposed on the first lead frame and electrically connected to the first lead frame and the second lead frame," as seen in Figure 2B - 2 and Figure 2B - 3:




*Figure 2B - 2 Keystone T5 LED Lamp (1)*




*Figure 2B – 3 Keystone T5 LED Lamp (2)*

69. ***1(d): a wire connecting the LED chip to the second lead frame;***— The exemplary Keystone T5 LED Lamp comprises "a wire connecting the LED chip to the second lead frame," as seen in Figure 2B - 4:




*Figure 2B -4 Keystone T5 LED Lamp*

70. ***1(e): wherein opposing sides of the first lead frame and the second lead frame face each other in a slanted state to the other sides of the lead frame.***— The exemplary Keystone T5 LED Lamp comprises opposing sides of the first and second lead frames that "face each other in a slanted state to the other sides of the lead frame" as seen in Figure 2B – 5 and Figure 2B - 6:




*Figure 2B - 5 Keystone T5 LED Lamp (1)*




*Figure 2B - 6 Keystone T5 LED Lamp (2)*

71. Upon information and belief, Super Lighting was aware of Plaintiff's LED patent portfolio, which includes the '196 Patent, and the relevance of Plaintiff's patents to Super Lighting's products since before the complaint was filed as a result of Plaintiff's proactive efforts to engage Super Lighting in licensing discussions. Super Lighting, however, did not enter into a license, but instead moved forward with the making, using and selling of products that had an objectively high chance of infringing one or more of Plaintiff's patents. Plaintiff therefore asserts that Super Lighting's infringement is willful and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

72. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '196 Patent.

73. Plaintiff is entitled to recover from Super Lighting all damages that Plaintiff has sustained as a result of Defendants' infringement of the '196 Patent, including, without limitation, a reasonable royalty.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,530,942**

74. Plaintiff incorporates by reference and re-alleges paragraphs 1-73 of the Complaint as if fully set forth herein.

75. Super Lighting has infringed and is infringing, either literally or under the doctrine of equivalents, the '942 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Keystone T5 LED Lamp (KT-LED25T5HO-48GC-835-DX2), KT-LED10.5T8-48G-830-DX2, KT-LED15PST8-U1G-8CSJ-X3, KT-LED15PST8-U1G-8CSJ-X3, KT-LED40PST8-96G-8CSJ-D2, KT-LED40PST8-D48GC-8CSJ-D2, KT-LED9T8-24G-830-DX2/USA, RAB T8-9-24G-830-SD-BYP USA, RAB T8-96G-DE-BYP, RAB T8-U6G-SD-HYB, T8-U1G-SD-HYB, RAB T8-8-48G-850-SD-BYP, Light Efficient Designs LED-10T8-830DE48-G3, among other substantially similar products (collectively, the "'942 Accused Products").

76. By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '942 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '942 Accused Products that it obtains during discovery.

77. ***1(a): A light emitting diode (LED) package, comprising;***— The exemplary Keystone T5 LED Lamp, as seen in Figure 3A - 1 and Figure 3A - 2, comprises a "light emitting diode (LED) package," as recited in claim 1:



*Figure 3A - 1 - LED Product – Keystone T5 LED Lamp*



*Figure 3A - 2 - LED Product - Keystone T5 LED Lamp*

78. ***1(b): a first lead frame and a second lead frame separated from each other;***— The exemplary Keystone T5 LED Lamp comprises a "first lead frame and second lead frame separated from each other," as seen in Figure 3B - 1, where the first and second lead frames are annotated in yellow:




*Figure 3B - 1 Keystone T5 LED Lamp*

79. ***1(c): an LED Chip disposed on the first lead frame and electrically connected with the second lead frame; and;***— The exemplary Keystone T5 LED Lamp comprises an "LED Chip disposed on the first lead frame and electrically connected with the second lead frame," as seen in Figure 3B - 2:




*Figure 3B - 2 Keystone T5 LED Lamp*

80. ***1(d): a resin covering at least portions of surfaces of the first and second lead frames, wherein;***— The exemplary Keystone T5 LED Lamp comprises "a resin covering at least portions of surfaces of the first and second lead frames," as seen in Figure 3B - 3:




*Figure 3B – 3 Keystone T5 LED Lamp*

81. ***1(e): at least one of the first and second lead frames comprises a first edge facing the other lead frame and a second side opposite the first side;***— At least one of the first and second lead frames in the exemplary Keystone T5 LED Lamp comprises "a first edge facing the other lead frame and second side opposite the first side" as seen in Figure 3B - 4 and Figure 3B - 5:




*Figure 3B - 4 Keystone T5 LED Lamp (1)*




*Figure 3B – 5 Keystone T5 LED Lamp (2)*

82. ***1(f): the first lead frame comprising a first groove disposed on a lower surface thereof, and the second lead frame comprises a second groove disposed on the lower surface thereof;***—The exemplary Keystone T5 LED Lamp comprises a first lead frame with "a first groove disposed on a lower surface thereof," and second lead frame with "a second groove disposed on a lower surface thereof;" as seen in Figure 3B - 6:




*Figure 3B - 6 Keystone T5 LED Lamp*

83. ***1(g): each of the first and second grooves is open only on the lower surfaces of the first and second lead frames, respectively; and;***—The exemplary Keystone T5 LED Lamp comprises first and second grooves that are "open only on the lower surfaces of the first and second lead frames, respectively;" as seen in Figure 3B - 7:




*Figure 3B - 7 Keystone T5 LED Lamp*

84. ***1(h): a depth of the first groove is equal to a depth of the second groove.***—The exemplary Keystone T5 LED Lamp contains a first and second groove with equal depths, as seen in Figure 3B – 8:




*Figure 3B – 8 Keystone T5 LED Lamp*

85. Upon information and belief, Super Lighting was aware of Plaintiff's LED patent portfolio, which includes the '942 Patent, and the relevance of Plaintiff's patents to Super Lighting's products since before the complaint was filed as a result of Plaintiff's proactive efforts to engage Super Lighting in licensing discussions. Super Lighting, however, did not enter into a license, but instead moved forward with the making, using and selling of products that had an

objectively high chance of infringing one or more of Plaintiff's patents. Plaintiff therefore asserts that Super Lighting's infringement is willful and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

86. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '942 Patent.

87. Plaintiff is entitled to recover from Super Lighting all damages that Plaintiff has sustained as a result of Defendants' infringement of the '942 Patent, including, without limitation, a reasonable royalty.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

A. That Judgment be entered that Defendants have infringed at least one or more claims of the Patents-in-Suit, directly and/or indirectly, literally and/or under the doctrine of equivalents;

B. An award of damages sufficient to compensate Plaintiff for Defendants' infringement under 35 U.S.C. § 284;

C. That the case be found exceptional under 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys' fees;

D. Costs and expenses in this action;

E. An award of prejudgment and post-judgment interest; and

F. Such other and further relief as the Court may deem just and proper.

October 16, 2026 Respectfully submitted,

*/s/ Cecil E. Key*
Cecil E. Key
Email: cecil.key@kkd-law.com
KEY KESAN DALLMANN, PLLC
1050 Connecticut Ave., N.W., Suite 500
Washington, D.C. 20036
Phone: 202-772-3191

Attorneys for Plaintiff
**SemiLED Innovations LLC**